IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAN MATIAS RAUDA,<br><br>Plaintiff,<br><br>v.<br><br>MERRICK B GARLAND, et al.,<br><br>Defendants. | Case No. 21-cv-05734-CRB<br><br>**ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER AND PETITION FOR A WRIT OF MANDAMUS** |

Willian Matias Rauda petitions this Court for a writ of mandamus and moves for a temporary restraining order. Mr. Matias's petition and motion seek the same basic relief: an order requiring Defendants (the Attorney General, the Director of the Executive Office for Immigration Review, and the Chairman of the Board of Immigration Appeals (BIA)) to instruct the BIA to adjudicate Mr. Matias's motion to reopen immigration proceedings by August 13, 2021. The Court concludes that oral argument is unnecessary and denies Mr. Matias's petition and his motion for a TRO.

## I. BACKGROUND

The Court has provided more detailed facts in its order denying Mr. Matias's previous motion for a TRO in a related case. See Case No. 21-cv-3897-CRB Order Denying TRO (dkt. 32). As explained in that order, Mr. Matias is a national of El Salvador who has been residing in the United States since February 2014. See id. at 1. In November 2018, Immigration & Customs Enforcement (ICE) detained Mr. Matias and initiated removal proceedings. Id. at 2. Despite finding that Mr. Matias was credible and had been tortured by Salvadoran authorities on two occasions, the Immigration Judge denied Mr. Matias CAT relief based on changed circumstances in El Salvador. Id. Mr.

Matias unsuccessfully appealed to the BIA and the Ninth Circuit. Id. at 3.

On April 22, 2021, Mr. Matias moved to reopen his immigration proceedings so that the BIA could reconsider his request for CAT relief given new developments in El Salvador that, he contends, undermine the agency's finding that he will not likely be tortured there. Id. To avoid being deported before the BIA ruled on his motion to reopen, Mr. Matias also moved the BIA for an emergency stay of removal. Id. On May 21, 2021, the BIA denied his motion for an emergency stay. Id. Mr. Matias's motion to reopen remains pending.

On May 24, 2021, Mr. Matias petitioned this Court for a writ of habeas corpus "to enjoin Respondents Department of Homeland Security (DHS) from executing his deportation." See Case No. 21-cv-3897-CRB Pet. (dkt. 1) ¶ 1. He then moved for an emergency temporary restraining order, which would "enjoin" the government "from removing" Mr. Matias until the Court ruled on his habeas petition. See Case No. 21-cv-3897-CRB Second Mot. for TRO (dkt. 10) at 9.

On June 14, 2021, the Court denied Mr. Matias's motion. See Case No. 21-cv-3897-CRB Order Denying TRO. The Court acknowledged that, assuming the truth of Mr. Matias's factual allegations, Mr. Matias faced a likelihood of severe irreparable harm if he was removed to El Salvador. Id. at 10. But the Court explained that 8 U.S.C. § 1252(g) deprived the Court of jurisdiction "to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien." Id. at 5. Because Mr. Matias's claims arose from the government's "decision or action" to "execute" his removal order, the Court held that § 1252(g) barred the Court from hearing them. Id. The Court further held that applying § 1252(g) to Mr. Matias's claims did not violate the Suspension Clause. See id. at 9.

Mr. Matias's appeal of the Court's previous order is pending before the Ninth Circuit, see Notice of Appeal (dkt. 34), and the government has agreed to not deport Mr. Matias until August 13, 2021, see Mandamus Pet. at 7 ¶ 35.

2

On July 27, 2021, Mr. Matias filed the instant petition for a writ of mandamus. See id. at 1. The petition asks the Court to order Defendants "to instruct the [BIA] to render a decision on [the] motion to reopen by no later than August 13, 2021" and to stay Mr. Matias's removal until the Court can rule on the petition. Id. at 15. The same day, Mr. Matias moved for a temporary restraining order. See Mot. for TRO (dkt. 5). That motion similarly asks the Court to "compel Defendants to rule on his motion to reopen removal proceedings . . . by no later than August 13, 2021" and to stay Mr. Matias's removal until the Court can rule on the merits of his petition. Id. at 1. The motion for a TRO is now fully briefed. See Opp. (dkt. 14); Reply (dkt. 16).

## II.  LEGAL STANDARD

A TRO is an "extraordinary remedy" that should be awarded only upon a clear showing that the plaintiff (or in this case, the petitioner) is entitled to such relief. See Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). The party seeking a TRO must establish: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm absent preliminary relief; (3) that the balance of equities tips in the plaintiff's favor; and (4) that an injunction is in the public interest. See id. at 20. Alternatively, the moving party must demonstrate that "serious questions going to the merits were raised," that "the balance of hardships tips sharply in the [petitioner's] favor," and that the other two Winter elements are satisfied. Alliance for Wild Rockies v. Cottrell, 632 F.3d 1127, 1134–35 (9th Cir. 2011) (quotation omitted). The "likelihood of success on the merits 'is the most important Winter factor.'" Disney Enters., Inc. v. VidAngel, Inc., 869 F.3d 848, 856 (9th Cir. 2017) (quoting Garcia v. Google, Inc., 786 F.3d 733, 740 (9th Cir. 2015)).

The federal mandamus statute provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Mandamus relief is available to compel an officer of the United States to perform a duty only if: (1) the plaintiff's claim is clear and certain; (2) the duty of the officer is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt; and (3) no

other adequate remedy is available.  See <u>Agua Caliente Tribe v. Sweeney</u>, 932 F.3d 1207, 1216 (9th Cir. 2019) (citing <u>Patel v. Reno</u>, 134 F.3d 929, 931 (9th Cir. 1997)); <u>Fallini v. Hodel</u>, 783 F.2d 1343, 1345 (9th Cir. 1986) (citations omitted).

Although a federal agency's regulations may create judicially enforceable duties, not all agency pronouncements do.  See <u>Lowry v. Barnhart</u>, 329 F.3d 1019, 1022 (9th Cir. 2003).  "To be judicially enforceable, a pronouncement must prescribe substantive rules— <u>not</u> interpretative rules, general statements of policy or rules of agency organization, procedure[,] or practice, and must have been promulgated pursuant to a specific statutory grant of authority and in conformance with the procedural requirements imposed by Congress."  <u>Id.</u> (quotation omitted) (emphasis in original).

## III. DISCUSSION

The Court previously rejected Mr. Matias's argument that the Court could order ICE to not deport Mr. Matias until the BIA rules on his motion to reopen.  <u>See</u> Case No. 21-cv-3897-CRB Order Denying TRO.  The Court now considers whether the Court can effectively order the BIA to rule on Mr. Matias's motion to reopen before ICE deports Mr. Matias.  Although Mr. Matias's new claim involves slightly different legal issues, the answer remains no.

### A. Jurisdiction

It is widely accepted "the specific" typically overrides "the general" in statutory interpretation.  <u>RadLAX Gateway Hotel, LLC v. Amalgamated Bank</u>, 566 U.S. 639, 645 (2012) (quoting <u>Morales v. Trans World Airlines, Inc.</u>, 504 U.S. 374, 384 (1992)).  Thus, although Congress has generally given district courts jurisdiction to rule on mandamus actions seeking to "compel" a federal "agency . . . to perform a duty owed to the plaintiff," 28 U.S.C. § 1361, the Court must consider whether the specific jurisdictional provisions of the Immigration and Nationality Act (as amended by the REAL ID Act of 2005) deprive the Court of jurisdiction here.

Under 8 U.S.C. § 1252(b)(9), "[j]udicial review of all questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien from the

4

United States under this subchapter shall be available only in judicial review of a final order under this section." And under 8 U.S.C. § 1252(a)(5), judicial review of a final order is available only via "a petition for review filed with an appropriate court of appeals." "Taken together, § 1252(a)(5) and § 1252(b)(9) mean that <u>any</u> issue—whether legal or factual—arising from <u>any</u> removal-related activity can be reviewed <u>only</u> through the PFR [petition for review] process." <u>J.E.F.M. v. Lynch</u>, 837 F.3d 1026, 1031 (9th Cir. 2016) (emphasis in original). These provisions thus "consolidate judicial review of immigration proceedings into one action in the court of appeals." <u>Id.</u> (quoting <u>INS v. St. Cyr</u>, 533 U.S. 289, 313 & n.3 (2001)) (internal quotation marks omitted).

These provisions prevent the Court from ruling on the merits of Mr. Matias's mandamus petition and motion for a temporary restraining order. Mr. Matias argues that the BIA has unreasonably delayed adjudication of his motion to reopen. <u>See</u> Mandamus Pet. at 13 ¶ 65; Mot. for TRO at 3, 5, 6, 7, 8, 9. The question whether the BIA has unreasonably delayed adjudication of Mr. Matias's motion to reopen is a question of law or fact "arising from" the "proceeding brought to remove" Mr. Matias. <u>See</u> 8 U.S.C. § 1252(a)(5). Because Mr. Matias's motion to reopen is part of those proceedings, questions regarding the BIA's adjudication of that motion arise from those proceedings.

<u>Jennings v. Rodriguez</u> is not to the contrary. <u>See</u> 138 S. Ct. 830 (2018). <u>Jennings</u> held that the question whether detained aliens have a statutory right to periodic bond hearings does not "arise from" any action taken or proceeding brought to remove the aliens because "cramming judicial review" of legal questions regarding detention and only peripherally related to actual removal proceedings "would be absurd." <u>Id.</u> at 840. Here, it is far from absurd to conclude that a legal question about the BIA's adjudication of a motion to reopen a removal proceeding arises from that proceeding.

Accordingly, this Court lacks jurisdiction over Mr. Matias's petition for a writ of mandamus and motion for a TRO.[1]

---

[1] The Court need not address whether 8 U.S.C. § 1252(g) also deprives the Court of jurisdiction.

### B.     Merits

If the Court had jurisdiction to address the merits of Mr. Matias's petition and motion, the Court would nonetheless deny them. The Court provides this analysis for the benefit of the parties.

Here, Mr. Matias has no "clear and certain" claim to the relief sought, and "the duty" of the BIA is not "nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt." Agua Caliente Tribe, 932 F.3d at 1216. Therefore, the Court could not grant Mr. Matias "the extraordinary remedy of mandamus." Cheney v. U.S. Dist. Court for Dist. of Columbia, 542 U.S. 367, 380 (2004) (quotation omitted).

Relevant agency regulations create no judicially enforceable duty to adjudicate a motion to reopen within a particular timeframe. See Lowry, 329 F.3d at 1022. Under 8 C.F.R. § 1003.1(e)(8), the BIA must act "promptly," issue decisions "with a priority for . . . detained aliens," and "dispose of all cases assigned to a single Board member within 90 days of completion of the record." But the same regulation clarifies that these "time limits . . . reflect an internal management directive . . . and shall not be interpreted to . . . create any substantive or procedural rights enforceable . . . in any court of law or equity." 8 C.F.R. § 1003.1(e)(8)(vi). Thus, in establishing internal goals for disposing of cases and motions, the executive branch was careful not to create judicially enforceable duties for itself.

Nor does the Administrative Procedure Act impose a mandatory duty on the BIA to adjudicate Mr. Matias's motion by August 13. Mr. Matias argues that because under 5 U.S.C. § 706(1) "[t]he reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed," this Court should compel the BIA to rule on his motion. The parties agree that if the Court were to reach this question, the Court would answer it by weighing the six considerations articulated by the D.C. Circuit in Telecomms. Research and Action Ctr. v. FCC:

> (1) the time agencies take to make decisions must be governed by a rule of reason,
> (2) where Congress has provided a timetable or other indication of the speed

6

> with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason,
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake,
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority,
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay, and
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

750 F.2d 70, 79–80 (D.C. Cir. 1984); see Mot. for TRO at 7; Opp. at 11; see also In re Pesticide Action Network N. Am., Natural Res. Def. Council, Inc., 798 F.3d 809, 813 (9th Cir. 2015) (applying this standard).

These factors do not clearly and certainly favor Mr. Matias and thus cannot support granting mandamus relief. Congress has not provided a timetable for adjudicating motions to reopen. And while the government concedes that the BIA must adjudicate motions "at a reasonable pace," Opp. at 11, there is scant reason to think that the BIA's pace is unreasonable given the agency's resources and the volume of matters before it. Of course, Mr. Matias's welfare is on the line, and any delay beyond August 13 prejudices his interests. The stakes for him could hardly be higher. But that may be true for many aliens with matters pending before the BIA. Mr. Matias also implicitly acknowledges that, as of the date of this order, his motion to reopen has been pending for roughly the average amount of time that it takes for the BIA to decide an appeal. See Habeas Pet. at 11–12 ¶ 55. In these circumstances, if it had jurisdiction, the Court would be unable to conclude with the required certainty that the agency's delay is unreasonable—particularly given the Court's lack of insight into the agency's resources and priorities. Accordingly, if it had jurisdiction, the Court would not take the extraordinary step of instructing a coequal branch of government how to carry out its duties.

\*

Given the Court's prior ruling that it could not order the executive branch to forestall Mr. Matias's deportation pending the executive branch's adjudication of his

motion to reopen, it is unsurprising that the Court cannot order the executive branch to adjudicate Mr. Matias's motion to reopen before the executive branch deports him. Mr. Matias's prior habeas petition and current petition for a writ of mandamus raise distinct legal issues but implicate similar separation of powers concerns. Both ask the Court to exercise supervisory authority over executive acts that are ordinarily, if not always, discretionary. The Court lacks the power to do so.[2]

## IV. CONCLUSION

For the foregoing reasons, the Court denies Mr. Matias's petition for a writ of mandamus and motion for a TRO.

**IT IS SO ORDERED.**

Dated: August 4, 2021



CHARLES R. BREYER
United States District Judge

---

[2] Because this order denies Mr. Matias's motion for a TRO and petition for a writ of mandamus, the Court denies as moot Mr. Matias's request that the Court stay his removal while adjudicating his petition for a writ of mandamus.